UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM E. NECESSARY, | ) | Case No. 06cv1805-WQH (BLM) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION FOR** |
| v. | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, | ) | **[DOC. NO. 11], AND DENYING** |
| | ) | **DEFENDANT'S CROSS-MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT [DOC. NO. 12]** |
| | ) | |

William E. Necessary brought this action for judicial review of the Social Security Commissioner's denial of his claim for disability insurance benefits, as provided by Title II of the Social Security Act. 42 U.S.C. §§ 401-33 (as amended on March 2, 2004, by Pub. L. No. 108-203). Before the Court are Plaintiff's Motion for Summary Judgment, Doc. No. 11, Defendant's Cross-Motion for Summary Judgment and opposition to Plaintiff's motion, Doc. No. 12, and Plaintiff's Reply to Defendant's Cross-Motion for Summary Judgment, Doc. No. 13.

These motions were referred to the Honorable Barbara L. Major for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). This Court found the motions appropriate for submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). Doc. No. 10. For the reasons

set forth below, this Court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's cross-motion be **DENIED**, and that the case be remanded to the ALJ for further consideration.

<u>**PROCEDURAL BACKGROUND**</u>

On October 28, 2004, William E. Necessary filed an application for disability insurance benefits. Administrative Record ("AR") at 11. This claim was denied initially and upon reconsideration, and Plaintiff filed a timely request for hearing. <u>Id.</u>

On December 7, 2005, a hearing was held before Administrative Law Judge Milan Dostal ("ALJ"). AR at 11. Plaintiff and vocational expert John Kilcher testified at the hearing. <u>Id.</u> Plaintiff alleged disability beginning September 22, 2004 due to injuries, including a fractured hip and a shortened leg, resulting from a motorcycle accident. <u>Id.</u> at 13-14. By written decision dated March 23, 2006, the ALJ found that Plaintiff could perform his past relevant work operating cranes and milling machines, and therefore was not disabled. <u>Id.</u> at 15. Plaintiff requested administrative review, and on July 11, 2006, the Appeals Council upheld the ALJ's ruling, thus finalizing the decision. <u>Id.</u> at 4-8.

Plaintiff commenced the instant action on September 7, 2006. Doc. No. 1. On May 7, 2007, Plaintiff filed the Motion for Summary Judgment currently before the Court, Doc. No. 11-1, together with a Memorandum of Points and Authorities, Doc. No. 11-2 ("Pl. Mem."). Defendant filed a Cross-Motion for Summary Judgment, Doc. No. 12-1, accompanied by a Memorandum of Points and Authorities, Doc. No. 12-2 ("Def. Mem.").[1] On

---

[1] Defendant filed both a memorandum in opposition to Plaintiff's motion for summary judgment, and a memorandum in support of his own cross-motion for summary judgment. Doc. Nos. 12-2 & 12-3. However, as these documents are identical in every way but their titles, hereafter this Court will only refer to Doc. No. 12-3, the memorandum opposing Plaintiff's motion for summary judgment.

1  July 3, 2007 Plaintiff responded to Defendant's cross-motion.  Doc. No.

2  13 ("Reply").

3  **FACTUAL BACKGROUND**

4  **I.   Plaintiff's Motorcycle Accident and Subsequent Treatment**

5       Plaintiff is a sixty-four year-old male with a Bachelor's degree.

6  AR at 187.   In the past fifteen years, he has been employed as a

7  millwright/mechanic, pipe fitter and crane operator, primarily at

8  electrical power plants, but also at various construction sites.  Id. at

9  92 & 98.  Plaintiff most recently worked as a millwright/mechanic at an

10 electrical power plant, from 1998 until his accident in 2004.   Id. at

11 92.

12      On September 22, 2004, Plaintiff was riding a motorcycle in Arizona

13 when a car ran a red light and struck him, throwing him off the

14 motorcycle.   Id. at 178.   He was taken to the emergency room and

15 diagnosed with a right femoral fracture, with impaction.   Id. at 14.

16 The following day, Dr. William McCormick performed an open reduction and

17 internal fixation on Plaintiff's hip, internally stabilizing the

18 fractured bone with several screws and a plate.   Id. at 121-22.

19      Upon returning home to California, Plaintiff began rehabilitative

20 treatment at the Sports Medical Clinic in San Diego, where he underwent

21 physical therapy from October 2004 through February 2005.   Id. at 141-

22 50.   During the same period, he visited Pioneer's Memorial Healthcare

23 District ten times for similar treatment.   Id. at 153.   After tracking

24 Plaintiff's recovery, Plaintiff's orthopedist at the Sports Medical

25 Clinic, Dr. Veerinder Anand, stated around March 2005 that the fracture

26 probably would not heal, and recommended surgery.   Id. at 179.

27      Seeking a second opinion, on March 8, 2005, Plaintiff returned to

28 Dr. McCormick, the surgeon who previously had operated on him.   Id.  Dr.

1  McCormick prescribed an electrical stimulation system to accelerate the
2  healing of Plaintiff's hip and, on July 12, 2005, reported that while
3  Plaintiff's fracture had mended, he would continue to suffer significant
4  muscular imbalance.  Id. at 171.  At the December 2005 administrative
5  hearing, Plaintiff complained of continued pain and incapacity.  Id. at
6  191-93, 195.  As of May 2006, Plaintiff continued to take occasional
7  pain medication for his injuries, and limped when walking, though less
8  so when wearing built-up shoes to even his leg lengths.  Id. at 179.

9      II.  **Medical Opinions**

10      In a letter written after Plaintiff's March 8, 2005 visit, Dr.
11 McCormick characterized Plaintiff as a "very stoic gentleman who
12 tolerates pain very well."  AR at 172.  Plaintiff was described as using
13 a crutch, walking with a bit of a limp, and taking medication for pain
14 and discomfort.  However, Dr. McCormick stated that Plaintiff exhibited
15 a good range of motion and possessed near-full internal rotation in his
16 hip.  Id.  The doctor also opined that Plaintiff may need total hip
17 replacement in the future, and "is going to be disabled from any
18 reasonable amount of work."  Id.  After further testing and treatment,
19 Dr. McCormick concluded in July 2005 that the fracture had healed.  Id.
20 at 171.  However, he cautioned that the injury had resulted in a 1/2" to
21 3/4" shortening of Plaintiff's right leg, which will case him to have "a
22 significant muscle imbalance" and will lead to an arthritic condition,
23 stiffness, and soreness.  Id.  Dr. McCormick stated that this imbalance
24 would render it "very dangerous for [Plaintiff] to be climbing around on
25 machinery or ladders or anything of that nature."  Id.  This was the
26 last time prior to the administrative hearing that Plaintiff sought
27 medical care for his hip injuries.  Id. at 179.

28      Two months later, in September 2005, Dr. McCormick completed a form

on behalf of Sun Life Assurance Company of Canada, this time without examining Plaintiff. <u>Id.</u> at 173-176. This report referred to the July conclusions concerning Plaintiff's recovery, and opined that, if Plaintiff's condition did not improve, he would be limited to "light sedentary work," such as clerical/administrative activity. <u>Id.</u> at 174. Dr. McCormick stated that Plaintiff was unable to bend, squat, or climb, and that other physical activity, such as pushing or pulling was significantly limited, as was his ability to lift more than 25 pounds. <u>Id.</u> Dr. McCormick concluded by stating that Plaintiff would be able to work full-time so long as he remained within these limitations. <u>Id.</u> at 174-175.

In February 2006, approximately two months after the administrative hearing, Plaintiff visited Dr. Stephen Brown for an independent medical exam. <u>Id.</u> at 178. Dr. Brown's assessment tracked that of Dr. McCormick, stating that Plaintiff's legs were different lengths, that he had a fairly profound limp marked by mild lurching, that he could not walk without significant fatigue, and that his healing apparently had "plateaued." <u>Id.</u> Like Dr. McCormick, Dr. Brown concluded that Plaintiff could not do work requiring him to go up and down ladders or stairs. <u>Id.</u> Dr. Brown also noted that Plaintiff continued to occasionally take pain medication and opined that he may require further care for his injuries. <u>Id.</u> Though the ALJ did not see this report, the Appeals Council did.[2] <u>Id.</u> at 7.

In response to Plaintiff's application for state social security disability benefits, two doctors employed by the California Department of Disability Services ("DDS") reviewed Plaintiff's medical records and

---

[2]The Appeals Council may consider material evidence, such as doctor's reports, not presented to the ALJ, which is then incorporated into the evidentiary record. <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452 (9th Cir. 1993).

1   issued opinions.  Id. at 131-40, 170.  Neither of these doctors

2   personally examined Plaintiff.  Id.  In December 2004, approximately

3   three months after Plaintiff's accident, internal medicine specialist

4   Dr. I. H. Jacobs issued a Residual Physical Functional Capacity

5   Assessment.  Id. at 131-38.  This report was based on a review of

6   Plaintiff's medical records to that point, including the Arizona

7   hospital documents and notes from the first two months of Plaintiff's

8   physical therapy.  Id. at 131-49.  In a summary checklist, Dr. Jacobs

9   checked boxes on a form indicating that Plaintiff would be capable of

10  medium work, and able to occasionally lift 50 pounds, stand and/or walk

11  about six hours in an eight-hour work day, and sit if permitted to

12  periodically alternate sitting and standing. Id. at 132. Dr. Jacobs also

13  checked boxes reflecting that Plaintiff had no other physical

14  restrictions, and would be able to climb ladders/stairs/ropes

15  frequently, as well as balance, kneel, and crawl without limitation.

16  Id. at 133.  Outside of three brief comments, "started on PT [physical

17  therapy]," "has occas. pain as of 11/11/04," and "he has satisfactory

18  progress," Dr. Jacobs provided no support for his opinions.  Id. at 131-

19  40.  Further, when Dr. Jacobs indicated that Plaintiff had no postural

20  limitations, including the ability to climb, balance, or crawl, he did

21  not check the individual boxes describing the six activities in

22  question, but merely drew a line through all boxes, showing that

23  Plaintiff could perform the activities "frequently."  Id. at 133.

24      One month later, and four months after the accident, Dr. Taylor-

25  Holmes composed a brief, one-page affirmation of Dr. Jacobs' report,

26  based on her review of the medical records to that point.  Id. at 170.

27  ///

28  ///

### III. **Administrative Hearing and the ALJ's Findings**

The ALJ heard Plaintiff's case on December 7, 2005.  AR at 182. The hearing centered on Plaintiff's testimony regarding his employment history, the injuries incurred during the motorcycle accident, and the effects Plaintiff's injuries have on his ability to work and conduct day-to-day life.  Id. at 182-200.  The ALJ also consulted vocational expert ("VE") John Kilcher regarding Plaintiff's previous work and his post-injury capacity for further employment.  Id. at 200-06.

Early in the hearing, Plaintiff testified that he was working as a millwright at the time of the motorcycle accident.  Id. at 188.  The ALJ asked Plaintiff, "And as a millwright what were you doing?  Were you milling, using milling machines to make some sort of tools then I suppose?"[3]  Plaintiff replied that he was "able" to run lathes and mills, but that the power plant at which he worked had a full-time machinist, so Plaintiff served as a lineman (assembler/repairer) of turbines, generators and gear boxes.  Id.  Plaintiff explained that he worked as a lineman "off and on for six or eight years," but that his job title in the past couple of years was millwright.  Id. at 188-89.

The ALJ proposed five hypotheticals to the VE, positing varying degrees of physical limitation, and asking what type of work Plaintiff could do given those limitations.  Id. at 200-03.  While answering the first, the VE stated that Plaintiff had been employed as a milling machine operator.  Id. at 200.  Plaintiff interrupted and stated that while he is "able to run a lathe and mill, it wasn't a normal part of [his] job," adding that his employer had a full-time machinist.  Id.  In

---

[3]Millwright is a distinct occupation from that of milling machine operator, involving significantly different duties, discussed infra at 25.  In this context, lathes and mills are similar devices, both used by milling machine operators to machine metal.

response, the VE opined that "even [] if the lathe wasn't part of [Plaintiff's] job, he would have transferable skills to that job ... and also the milling machine." Id. at 201. Despite Plaintiff's objections regarding his lack of milling experience, in hypotheticals two and three the ALJ asked whether Plaintiff would be able to perform the work of crane or milling machine operator, given increasing degrees of pain. Id. at 201-02. The VE responded that Plaintiff would be able to perform both jobs when subject to moderate, medication-controlled pain, but not when suffering severe, uncontrollable pain. Id.

The ALJ based the fourth hypothetical on the limitations outlined in Dr. McCormick's final report, which stated that, among other restrictions, Plaintiff was limited to light sedentary work. Id. at 173-76 & 202-03. The VE responded that, given these limitations, Plaintiff would not be able to return to "any of the past work" he had performed before. Id. at 202-03. Neither the ALJ nor the VE clarified whether the phrase "past work" included milling machine operator. The VE did conclude that despite the limitations described by Dr. McCormick, Plaintiff would be able to find light sedentary employment in the national economy as an assembler or production inspector. Id. at 203-04. The ALJ's final hypothetical involved the same limitations as the previous one, but with controllable pain, to which the VE responded that Plaintiff could perform the same light sedentary work as described in hypothetical four. Id. at 204-05.

Plaintiff also answered questions regarding his day-to-day life. He often walks a mile in the mornings (assisted by a cane), does dishes, drives his wife to work and performs odd jobs around the house. He attends veteran's functions every couple of weeks and occasionally works on his motorcycle. Id. at 193-96.

When, at the conclusion of the hearing, the ALJ asked Plaintiff if he had questions for the VE, Plaintiff objected to the VE's statements that he could return to work as a crane operator, or any type of employment that would require climbing.   Plaintiff stated that his doctor had instructed him not to climb ladders, and that there was no way to enter a crane without doing so.  Id. at 205.  The ALJ responded by stating, "Well, that's in there.  That's in this hypothetical."  Id. No further explanation was given.  Id.

On March 23, 2006, the ALJ issued a written ruling in Plaintiff's case, incorporating a series of factual findings and legal conclusions. Id. at 11-16.  The ALJ denied Plaintiff's disability claim, and held that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty-five pounds frequently and fifty pounds occasionally, and that he was able to sit, stand, and/or walk for about six hours of an eight-hour workday.  Id. at 15.  The ALJ made no mention of Plaintiff's capacity for climbing, and his RFC assessment reflects the opinions of the DDS doctors.  Id. at 131-38.  Based on this RFC, the ALJ held that Plaintiff was capable of performing past relevant work as a crane operator and as a milling machine operator.  Id. at 15-16.  The ALJ also noted that, even if Plaintiff could not return to his past relevant work, Plaintiff's professional skills were transferable to other jobs in the national economy, such as assembler or product inspector.  Id. at 16.

**LEGAL STANDARD**

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve

9

months or more; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A). An applicant must meet both requirements to be considered "disabled." Id.

The Secretary of the Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Where the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. Where the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404, Subpart P, Appendix 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. A claimant who is able to perform his previous work is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform his previous work, at the

fifth and final step of the process the burden shifts to the Secretary to prove that in view of the claimant's age, education, and work experience, there is other work he may perform in the national economy. If so, the claimant is not entitled to disability benefits. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of the Social Security Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. Review must be sought within sixty days after the mailing of the final decision and the Commissioner's denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming,

06cv1805-WQH (BLM)

modifying, or reversing the Commissioner's decision.   42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the SSA for further proceedings.  Id.

## DISCUSSION

Plaintiff contends that he has been disabled since September 22, 2004, and is therefore entitled to receive disability benefits and supplemental social security income. AR at 11.  He argues that the ALJ erroneously denied his claim for such benefits by holding that (1) Plaintiff is physically capable of returning to his past relevant work as a crane operator, (2) Plaintiff has past relevant work as a milling machine operator, and (3) Plaintiff has transferrable skills to other work.  Pl. Mem.; Reply.  Plaintiff asks the Court to reverse the ALJ's decision and immediately award him disability benefits. Alternatively, Plaintiff requests the Court to remand the case for a new hearing with a different ALJ.  Pl. Mem. at 11; Reply at 6.

Defendant contends that the ALJ acted properly, and that Plaintiff's action should therefore be dismissed with prejudice. Alternatively, Defendant argues that even if this Court were to disagree with the ALJ's ruling, the proper remedy is remand, not an award of benefits.  Def. Mem. at 7.

### I.   **The ALJ Erred by Holding That Plaintiff May Return to his Previous Work as a Crane Operator**

Plaintiff argues that the ALJ erred by rejecting, without providing sufficient explanation for the rejection, the opinion of Plaintiff's treating physician that Plaintiff is unable to climb due to residual injuries from his accident.  Pl. Mem. at 8-9.  Plaintiff asserts that the ALJ also erred by presenting the VE with hypothetical situations which omitted Plaintiff's inability to climb and then relied on the VE's

conclusions to determine that Plaintiff could return to his prior employment as a crane operator, an occupation that demands occasional climbing.  Id.; DOT 921.663-010, 921.662-038, 921.663-062 (operating various types of cranes requires "occasional" climbing, up to 1/3 of the time).[4]  Plaintiff further argues that there is not substantial evidence supporting the ALJ's implicit conclusion that Plaintiff retains the ability to climb.  Pl. Mem. at 8-9.  Without citing any facts to support his position, Defendant contends that the ALJ did not err, and the ALJ properly limited his hypothetical to those impairments supported by substantial evidence in the record.  Def. Mem. at 4-5.

An ALJ's decision only will be disturbed if it is not supported by substantial evidence or was founded on faulty legal standards.  Batson, 359 F.3d at 1193.  In assessing the ALJ's decision, a reviewing court must consider the "entire record as a whole,"  and may only review the reasons provided by the ALJ in the disability determination.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).  In the instant case, considering the record as a whole, the ALJ erred by subscribing to the statements of non-examining physicians that Plaintiff will be able climb ladders and ropes without limitation, without providing a basis for rejecting Plaintiff's statements and the treating physician's conclusion that Plaintiff is unable to perform these activities, AR at 131-40, 170, and by presenting the VE with hypotheticals omitting the climbing restriction and then relying on the responses to those incomplete hypotheticals, id. at 15-16, 201-06.

---

[4]Plaintiff states that he has "run overhead cranes but mostly smaller hydraulic cranes."  AR at 199.  The DOT lists four main types of cranes, three of which—overhead, locomotive, and truck- require "occasional" climbing up to 1/3 of the time. DOT 921.663-010, 921.662-038, 921.663-062.  The final type of crane, monorail, does not require climbing.  DOT 921.663-042.  Because the ALJ did not pursue this line of questioning or analysis, the Court does not know what type of crane Plaintiff operated, nor to what type the ALJ referred.

1    A.    The ALJ Erred by Discrediting Without Adequate Justification
           the Opinion of Plaintiff's Treating Physician that Plaintiff
2          Cannot Climb

3        The Ninth Circuit places physicians into one of three categories-

4    treating, examining, and non-examining- and grants different weight to

5    each, depending on the extent of the doctor-patient relationship.  E.g.,

6    Orn, 495 F.3d at 631-32; Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

7    1995).   By statute, and affirmed in case law, the Social Security

8    Administration prefers the opinion of a treating physician to that of a

9    non-treating physician.  Id.; 20 C.F.R. § 404.1527.  The opinion of an

10   examining physician is accorded less deference than that of a treating

11   physician, but more than a non-examining physician.  Id.  A treating

12   physician's opinion only will be denied controlling weight if it is not

13   "well-supported" or when it is "inconsistent with other substantial

14   evidence in the record."  20 C.F.R. § 404.1527(d)(2).  However, even

15   when not controlling, the treating opinion still commands substantial

16   deference; the SSA advises that "[i]n many cases, a treating source's

17   medical opinion will be entitled to the greatest weight and should be

18   adopted, even if it does not meet the test for controlling weight."

19   Social Security Ruling ("SSR") 96-2p.

20       In the instant case, there are reports from four physicians: Dr.

21   McCormick (operated on Plaintiff after the motorcycle accident and

22   treated him thereafter), Dr. Jacobs (DDS physician who issued RFC

23   report), Dr. Taylor-Holmes (confirmed Dr. Jacobs' report), and Dr. Smith

24   (examined Plaintiff after the administrative hearing and issued report).

25   However, Dr. McCormick is the only treating physician.  He operated on

26   Plaintiff in the immediate aftermath of the Arizona motorcycle accident,

27   oversaw Plaintiff's short-term recovery in the hospital and longer-term

28   recovery at home, and was the physician to whom Plaintiff turned when he

1   needed a second opinion regarding surgery.  AR at 121-22, 72, 79.  He
2   also recommended a tomogram (x-ray) and treatment for Plaintiff,
3   including electrical stimulation and physical therapy, and followed up
4   on the results of both.  Id. at 171, 179.  After Plaintiff's initial
5   recovery in the Arizona hospital, Dr. McCormick personally treated
6   Plaintiff twice more, and provided three opinions on Plaintiff's
7   recuperation and potential for future work.  Id. at 171-72, 179.  See
8   Orn, 495 F.3d at 633 (doctor who treated claimant during hospitalization
9   and provided post-hospitalization follow-up treatment classified as
10  treating physician).

11      Other physicians who issued reports had less contact with
12  Plaintiff.  Dr. Smith met with Plaintiff on one occasion, discussed his
13  situation with him, administered a series of in-person physical tests,
14  and reviewed past x-rays before issuing an opinion on Plaintiff's
15  progress and ability to work.  Id. at 178-81.  Under the guidelines, he
16  is therefore an examining physician.  20 C.F.R. 404.1527(d)(1); Widmark
17  v. Barnhart, 454 F.3d 1063, 1065-66 (9th Cir. 2006) (doctor who reviews
18  claimant's medical records and conducts one-time physical exam
19  classified as examining physician).  As the ALJ never saw Dr. Smith's
20  report, he was obviously not required to consider it.  Nonetheless, Dr.
21  Smith's status as an examining physician is relevant to the weight a
22  reviewing court grants his opinion.  See supra at 5 n.2 (evidence
23  adduced after the administrative hearing may be incorporated into the
24  record.)

25      The remaining two physicians, state agency Drs. Jacobs and Taylor-
26  Holmes, never saw Plaintiff.  AR at 131-38, 170, 177.  They are
27  therefore non-examining physicians.  Widmark, 454 F.3d at 1066-67 (state
28  agency physician who reviews claimant's record and completes form is

15                                              06cv1805-WQH (BLM)

non-examining physician).  Dr. Jacobs' report was issued three months after Plaintiff's accident, and was based solely on medical reports from the Arizona hospital and a partial, two-month account of Plaintiff's physical therapy.  AR at 131-49.  Dr. Taylor-Holmes' report, written one month later, merely re-affirmed Dr. Jacobs' findings without providing further detail.  Id. at 170.

In light of the above, the ALJ was required to give the greatest weight to Dr. McCormick's opinion, and lesser consideration to the views of Drs. Jacobs and Taylor-Holmes.  Supra at 14.  As previously stated, Dr. McCormick opined that Plaintiff could not climb, AR at 171-74, while Drs. Jacobs and Taylor-Holmes declared that he would be able to do so, id. at 133, 170.  As there is contradictory evidence in the record, Dr. McCormick's opinion is not entitled to "controlling weight."  20 C.F.R. § 404.1527(d)(2); SSR 96.2p.  However, it should have been accorded deference.  Id.

Furthermore, the DDS physicians' opinions should have been given diminished weight for the manner in which they were issued.  Doctor's opinions that are "conclusory and brief" are to be given lesser deference.  Batson, 359 F.3d at 1190, 1195.  This is especially true when those opinions are "in the form of a checklist, [do] not have supportive objective evidence, [and are] contradicted by other statements and assessments" of the claimant's medical condition.  Id. at 1195, 1195 n.3 (citing Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1988)).  Here, Dr. Jacobs' opinion is precisely that: a checklist concerning Plaintiff's capacity, that is virtually devoid of citations to supporting evidence (Dr. Jacobs' only comments are "started on PT," "has occas. pain as of 11/11/04" and "he has satisfactory progress such that [] he should be functioning at this RFC"), and is contradicted by

the opinions of Plaintiff's treating doctor.   AR at 131-40. Furthermore, Dr. Jacobs did not even check off individual boxes regarding Plaintiff's ability to climb stairs/ladders/scaffolds, or to balance or crawl, among other tasks. Id. at 133.  He merely drew a line through a number of check boxes, thereby communicating his opinion that Plaintiff had no "postural limitations," and could perform the enumerated tasks "frequently." Id.  Dr. Taylor-Holmes' opinion merely states that she agrees with Dr. Jacobs, and adds that Plaintiff uses a crutch and reports "slight improvement of his condition." Id. at 170.

In contrast, Dr. McCormick personally examined Plaintiff, ordered and conducted medical tests, and issued several opinions enumerating specific medical reasons for his findings. Id. at 171-76 (while one of Dr. McCormick's reports is in the form of a checklist as well, it was preceded by two letters which presented Plaintiff's condition and treatment in great detail.)  Dr. McCormick opined that Plaintiff's differing leg lengths will cause "a significant muscle imbalance" and render it "very dangerous for him to be climbing around on machinery or ladders or anything of that nature." Id. He also stated that Plaintiff was unable to bend, squat, or climb, and that other physical activity, such as pushing or pulling was significantly limited, as was his ability to lift more than 25 pounds. Id.  Despite these reports, the ALJ implicitly rejected Dr. McCormick's opinion that Plaintiff could not climb and held that Plaintiff was able to return to work as a crane operator, a job that demands climbing.

An ALJ must give "specific, legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066-67 (citing Lester, 81 F.3d at 830-31); accord Andrews v. Shalala, 53 F.3d 1035,

1043 (9th Cir. 1995); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 752-53 (9th Cir. 1989). When explaining the decision to reject a treating doctor's opinion, an ALJ may not "merely state[] a fact" without explaining "how that fact leads to the conclusion that [the examining physician's opinion] should be disregarded." <u>Widmark</u>, 454 F.3d at 1067. Rather, he must set forth his own interpretations and explain why they, rather than the doctor's, are correct. <u>Orn</u>, 495 F.3d at 632 (citing <u>Embrey v Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ in this case states that he "gives little weight to Dr. McCormick's [] opinions, as they are not consistent with the medical record as a whole." AR at 14. He explains that (1) the record "does not indicate any prescription for the level of pain killers that might be expected with a person so immobilized by pain," (2) Dr. McCormick's opinions were submitted fewer than twelve months after the date of the motorcycle accident, (3) that the doctor appears to have accepted Plaintiff's subjective complaints and assumed the role of an "advocate" for Plaintiff, and (4) that the issue of disability is ultimately reserved for the Commissioner of Social Security. <u>Id.</u> These reasons are insufficient.

While a claimant's lack of pain medication may compromise claims of disability, <u>e.g.</u>, <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995), that factor only peripherally applies in the instant case. Dr. McCormick does not appear to be concerned with the pain Plaintiff might suffer when climbing into cranes so much as he is with the "significant muscle imbalance" that would make it "very dangerous" for Plaintiff to do so. AR at 171. Presumably, the broader concern is not Plaintiff's discomfort while climbing, but the chance that he might fall. While Dr. McCormick does refer to "stiffness and soreness" that would prevent

1  Plaintiff from "climbing around on machinery," that is in the context of
2  a potential future arthritic condition.  Id.

3       The ALJ also discredits Dr. McCormick by stating that the doctor's
4  opinions were issued fewer than twelve months after the accident, and
5  refers to guidelines stating that disability benefits are premised on an
6  impairment lasting at least twelve months.  Id. at 14 (citing 20 C.F.R.
7  404.1509 "and/or" 416.909).  While technically true, Dr. McCormick's
8  last report was issued one week before the one-year anniversary of the
9  motorcycle accident.[5]  AR at 171-176.  Inexplicably, however, the ALJ
10 then relies on DDS reports issued only three and four months after the
11 accident.  Id. at 15, 132.  While the recency of a doctor's opinion
12 certainly is a factor in assessing its relevance, see, e.g., Orn, 495
13 F.3d 625 at 633, that logic must be applied consistently.

14      The ALJ also argues that Dr. McCormick's opinion ought to be
15 discredited because it is one of an "advocate" who has "accepted the
16 claimant's subjective complaints."  Id. at 14.  This unsupported
17 assertion "merely states a fact and does not explain- specifically and
18 legitimately or otherwise- how that fact leads to the conclusion" that
19 the treating doctor's evaluation should be disregarded.  Widmark, 454
20 F.3d at 1067; see also Orn, 495 F.3d at 1067.  As the ALJ does not
21 support his contention that Dr. McCormick has accepted Plaintiff's
22 subjective complaints, such as by citing to concrete and contradictory
23 medical evidence in the record, he fails to meet his burden in this
24 respect.

25      Finally, the ALJ states that the "issue of whether a claimant is
26 'disabled' is reserved to the Commissioner."  AR at 14.  This is true,

27 _____

28      [5]Plaintiff's accident was in September 2004 and Dr. McCormick issued three
    opinions in 2005: in March, July, and September.  AR at 171-76.

and per C.F.R. §§ 404.1527(e)(1)-(2) statements by a medical source that a claimant is "disabled" or "unable to work" are not medical opinions but "administrative findings that are dispositive of a case," and therefore need not be considered by the ALJ.   In accord with this regulation, Dr. McCormick's statement that Plaintiff "is going to be disabled from any reasonable amount of work" is not entitled to deference.  However, the same regulation exhaustively details the weight the ALJ must grant to medical opinions, and the particular deference he must give to the statements of a treating doctor.  20 C.F.R. § 1527.  It was in this respect that the ALJ erred, not by ignoring Dr. McCormick's ultimate conclusion, but by giving "little weight," AR at 14, to his statements regarding Plaintiff's physical condition and inability to climb, and then failing to explain his reasons for doing so.  And while the ALJ was not privy to Dr. Smith's report, that report supports this Court's opinion that Dr. McCormick's statements should have been granted greater deference.  This is particularly compelling evidence as it comes from an independent examining physician who provided an extensive, four-page analysis of Plaintiff's condition, based on an in-person physical exam and review of Plaintiff's medical records.  AR at 177-81.

For the reasons set forth above, the ALJ erred by rejecting the treating physician's opinion that Plaintiff is unable to climb without providing "specific, legitimate reasons supported by substantial evidence in the record" for doing so.  See Widmark, 454 F.3d at 1066-67.

B.   The ALJ Erred by Omitting Plaintiff's Climbing Limitation From the VE's Hypotheticals

When an ALJ presents a VE with hypotheticals, the ALJ must "set[] out *all* the limitations and restrictions of the particular claimant." Embrey, 849 F.2d at 422 (emphasis in original).  The depiction of the

claimant's impairments must be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101.  When a claimant alleges a limitation, and the ALJ omits that limitation from the hypotheticals, the ALJ "must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997); see also Bunnell v. Sullivan, 947 F.2d 341, 345-36 (9th Cir. 1991) (*en banc*) (ALJ discrediting claimant's pain testimony must provide reasons "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds") (quotations and citations omitted).  In the instant case, Plaintiff stated that he could not climb, and the ALJ erred by omitting this limitation from his hypotheticals without specifically explaining his rationale for doing so.

The ALJ posited three hypotheticals that did not expressly preclude Plaintiff from climbing. AR at 201-02.  In these hypotheticals, the ALJ described an individual with the following limitations: one leg shorter than the other, with pain in his leg and hip, who could lift twenty-five pounds on an occasional basis, who should avoid walking or standing more than two hours at a time, and who suffered varying degrees of pain.  Id. at 201-02.  The last two hypotheticals incorporated the additional limitations described by Dr. McCormick and Plaintiff, including a total inability to climb.  Id. at 202-05.  In response to the five hypotheticals, the VE stated that a person with the limitations described in situations one and two (including slight hip and leg pain and one leg shorter than the other) could return to past work as a crane operator, while an individual subject to the increased limitations of the other three hypotheticals could not.  Id. at 201-06.

After the ALJ presented the hypotheticals, Plaintiff clearly stated that he was unable to climb:

> Q:   ... Well, Mr. Necessary, is there any other hypothetical that you want to propose to the vocational expert or questions of the vocational expert.
>
> A:   I'm not sure.  My problem is with the crane operator, *I'm not supposed to climb at all*.
>
> Q:   Okay.
>
> A:   The doctor told me, and he wrote it in one of his letters.  *He said he didn't want me to climb a ladder, and I don't*.[6]
>
> Q:   Well, that's in here.  That's in this hypothetical.[7]
>
> A:   He -- and *there's no way to get in the crane without climbing in it*, up a ladder, and that's also the problem with a lot of these things*.

AR at 205 (emphasis added).

In his opinion, the ALJ adopted the RFC reflected in situations one and two, and therefore determined that Plaintiff could return to work as a crane operator.  <u>Id.</u> at 15-16.  By omitting the climbing limitation from the hypotheticals, and then basing his holding on responses to those hypotheticals, the ALJ effectively rejected Plaintiff's testimony.  The ALJ provides no support for his decision to omit the climbing limitation.  AR at 11-16.  He does, however, enumerate reasons for disbelieving Plaintiff in general, stating that:

> [A]fter carefully considering all the medical and documentary evidence, the undersigned finds that there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on

---

[6]During Plaintiff's testimony, the ALJ never asked Plaintiff about his ability to climb.  AR at 184-98.

[7]The ALJ correctly states that the climbing limitation was included in some of the hypotheticals preceding this exchange with Plaintiff.  AR at 205.  However, as discussed above, the first three hypotheticals assumed Plaintiff could climb, <u>id.</u> at 200-02, and, as the ALJ ultimately held that Plaintiff could return to crane operation, <u>id.</u> at 15, the first three hypotheticals are the ones at issue.

examination, the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians, and the claimant's admitted daily activities. Furthermore, it is not unreasonable to infer that a person who experiences the levels of pain and disability alleged by the claimant would seek medical care on a regular and persistent basis. However, the claimant has not done so.

The undersigned notes that the claimant's impairments were not disabling for twelve months. Rather, he made a fairly speedy recovery and finished physical therapy a few months after the accident. Subjective complaints are considered credible only to the extent that they are supported by the evidence of record. However, the allegations by the claimant as to the intensity, persistence, and limiting effects of his symptoms are not well supported by probative evidence and are not wholly credible.

AR at 15.

These statements do not constitute the "specific findings" necessary to support the ALJ's omission of the climbing limitation. Light, 119 F.3d 793. Not only does the ALJ make no mention of Plaintiff's ability to climb, he fails to state what testimony he disbelieves or to sufficiently specify what evidence undermines that testimony; he merely states that Plaintiff's "allegations of disabling pain and limitation" are not "wholly credible." AR at 15. For example, while the ALJ mentions discrepancies between Plaintiff's assertions and the diagnostic tests and findings, id., he neglects to identify which assertions, which tests, or which findings. Likewise, the ALJ does not identify Plaintiff's "admitted daily activities" or the statements they contradict. Id. This is insufficient. See Orn, 495 F.3d at 693, (when arguing that daily activities belie claimant's statements "[t]he ALJ must make specific findings relating to [the] activities").

Further, the ALJ's contention that Plaintiff's allegations "are not well supported by probative evidence," is based on an improper assessment of the record. AR at 15. As discussed supra at 14, when

proper weight is given to the opinion of Plaintiff's treating physician, Dr. McCormick, the climbing limitation is in fact supported by probative evidence.  In two separate opinions, Dr. McCormick stated either that it would be "very dangerous for [Plaintiff] to be climbing around machinery or ladders," AR at 171, or that Plaintiff had zero capacity for climbing, id. at 174.  As discussed above, while Dr. McCormick's opinion is not controlling, it does merit substantial deference.  Lester, 81 F.3d at 830 (9th Cir. 1995); 20 C.F.R. § 404.1527; SSR 96-2p ("[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").  The ALJ's statement that Plaintiff's allegations are not "well supported" is thus compromised by his misapplication of the legal standard.

The ALJ erred by failing to provide sufficient reasons for omitting the climbing limitation from the hypothetical.  See, e.g., Embrey, 849 F.2d at 423 (case remanded when hypothetical did not reflect all of claimant's limitations); Lester, 81 F.3d at 834 (improper failure to credit claimant's testimony constitutes legal error).  The VE's response to these hypotheticals thus has "no evidentiary value," and the ALJ's reliance on such testimony was improper.  Embrey, 849 F.2d at 418.

For all of these reasons, these errors invalidate the ALJ's conclusion that Plaintiff was not disabled because he could return to his prior work as a crane operator.

**II.  The ALJ's Ruling That Plaintiff Has Past Relevant Work As A Milling Machine Operator Was Based On Insufficient Evidence And Involved Legal Error**

Plaintiff also contests the ALJ's holding that he has past relevant work as a milling machine operator, stating that the ALJ's finding is not supported by substantial evidence and should therefore be reversed.

Pl. Mem. at 8; Reply at 1-5.  He argues that the ALJ erred (1) by confusing two occupations with the term "mill" in them- "millwright" and "milling machine operator"- and assigning them both to Plaintiff when in fact he had only worked as a millwright, (2) by failing to fully develop the record in light of this ambiguity, and (3) by relying on VE testimony without inquiring whether that testimony conflicted with the Dictionary of Occupational Titles ("DOT").  Reply at 1-5.  Defendant contends that Plaintiff's own statements indicate past relevant work as a milling machine operator, and that the ALJ properly relied on this and the VE's testimony in reaching his conclusion.  Def. Mem. at 3-4.

An ALJ's determination of past relevant work will be upheld if the judge applied the proper legal standard and there is substantial evidence in the record to support the decision.  <u>Batson</u>, 359 F.3d at 1193.  Here, there is not substantial evidence supporting the ALJ's decision that Plaintiff previously had worked as a milling machine operator.  Rather, the record reflects significant confusion between the jobs of millwright and milling machine operator.  As discussed at greater length below, millwrights and milling machine operators have entirely distinct duties.  Millwrights assemble machinery, while milling machine operators cut materials, typically metal, with a milling machine.  Compounding this confusion, the ALJ committed legal error first by failing to develop the record regarding Plaintiff's machinist work experience, and then by failing to inquire whether the VE's testimony conflicted with the DOT.

    A.   <u>The ALJ's Finding That Plaintiff Previously Worked As A Milling Machine Operator Is Not Supported By Substantial Evidence</u>

The ALJ ruled that Plaintiff is "capable of performing past relevant work as a ... milling machine operator."  AR at 15.  In

reaching this conclusion the ALJ relied in part on the VE's statement to the same effect.  Id.  As defined by the Social Security regulations, past relevant work is that done within the past fifteen years, that lasted long enough for the claimant to learn to do it, and was performed at the level of substantial gainful activity.  20 C.F.R. § 404.1565(a).  While Plaintiff testified that he can perform at least some of the duties of a milling machine operator, AR at 188, 200, there is very little evidence regarding how long he has possessed these skills, or, more significantly, whether he ever utilized them either "substantially" or "gainfully."

As a threshold issue, the duties of millwrights must be distinguished from those of milling machine operators.  According to the DOT, millwrights install and dismantle machinery and equipment according to layout plans, using hoists, lift trucks, hand tools, and power tools.  They "may" also operate an engine lathe (milling machine) to machine parts.  DOT 638.281.018; see Vertigan v. Halter, 260 F.3d 1044, 1052 (9th Cir. 2001) (reviewing court may consult the DOT for job descriptions and classification).  Both in writing and at the administrative hearing, Plaintiff stated that he has worked as a millwright, and this fact is not contested.  E.g., AR at 80, 92-101, 189.

While the DOT has no entry for a milling machine operator per se, it does list a number of jobs whose primary task involves operating a milling machine.  E.g., Milling Machine Set-Up Operator I & II, DOT 605.280-010 & 605.282-010; Gear Milling Machine Set-Up Operator, DOT 602.382.022.  These entries essentially describe an operator using the machine to carve flat or curved surfaces on metal, thereby creating parts for other machines.  Id.  This work is distinct from that of a

millwright.   As Plaintiff explains: "A milling machine operator makes things.   They produce objects, or make tools or dies, to make other objects ... Millwrights do not produce things.   Millwrights install or repair machinery."   Reply at 3.

When listing his "past relevant work" on a SSA form, Plaintiff listed "millwright," "pipe fitter," and "crane operator."   He made no mention of milling machine operation.   AR at 80.   Another SSA form asked Plaintiff to list his jobs in the past fifteen years, and requested him to describe in some detail the nature and demands of those jobs.   <u>Id.</u> at 92-101.   Plaintiff enumerated the same jobs as in the previous form, with the addition of "mechanic."   In describing his duties, Plaintiff stated that he was required to "maintain and repair turbines, gearboxes, pumps, and other equipment."   AR at 93, 100.   He also had to "take measurements and prepare pipe for welding (cut length etc.)," and operate cranes.[8]   <u>Id.</u> at 93-98.   Again, there is no mention of milling machines or tasks related to machining parts.

The first mention of such work was during the administrative hearing, when the ALJ apparently confused a millwright's tasks with those of a milling machine operator.   <u>Id.</u> at 188.   The ALJ asked Plaintiff what sort of work he was doing at the time of his accident. Plaintiff responded:

> A:   My job title was millwright.
>
> Q:   Okay.   And as a millwright what were you doing?   Were you milling, using milling machines to make some sort of tools

---

[8]Defendant points to Plaintiff's statement that he did "general machinery" work, AR at 188, arguing that Plaintiff thus worked with lathes and mills. Def. Mem. at 4. However, general machinery work is to be expected from somebody in Plaintiff's occupation who assembles and dissembles machines, and does not necessarily equate to milling machine work.   Moreover, the ALJ did not question Plaintiff about his "general machinery" work, so there is no factual basis supporting Defendant's argument that Plaintiff has prior relevant work as a milling machine operator.

1    then I suppose?

2    A:   Actually, we, I'm able to run lathes and mills, but we had a
          full-time machinist, so my main work was a lineman of turbans
3         [sic] and generators and gear boxes ––

4    Q:   Uh-huh.

5    A:   –– and that sort of thing.

6    Id. at 188.

7        In using the phrase "using milling machines to make some sort of

8    tools," the ALJ echoes the description of a milling machine operator

9    provided in the DOT- somebody who uses a milling machine to create tool

10   parts.  E.g., Milling Machine Set-Up Operator I & II, DOT 605.280-010 &

11   605.282-010.   Plaintiff's  response  is  an  attempt  to  remedy  this

12   misunderstanding,  and  the  statement  that  his  company  had  a  full-time

13   machinist  indicates  that  he  was  not  employed  as  a  milling  machine

14   operator.   AR at 188.   The ALJ did not ask Plaintiff any additional

15   questions to resolve this confusion or to establish that Plaintiff's

16   past employment included work as a milling machine operator.

17       However, in later testimony, the VE, without providing a factual

18   basis, stated that Plaintiff "did work with [sic] a milling machine

19   operator."  Id. at 200.  Plaintiff again interrupted and explained that,

20   "[a]lthough I am able to run a lathe and mill, it wasn't a normal part

21   of my job ... We had a full-time machinist."  Id.  Shortly thereafter,

22   the VE, again without providing factual support, commented that even if

23   a lathe or mill hadn't been part of Plaintiff's job, he possessed those

24   skills.  Id. at 201.  Despite these ambiguities, the ALJ took no action

25   to clarify the facts and continued to assume that Plaintiff previously

26   had worked as a milling machine operator; ultimately holding that he

27   could return to that position.  Id. at 15, 202.

28       The DOT states that the positions of milling machine set-up

                                    28                           06cv1805-WQH (BLM)

operator I & II both require "over 2 years and up to and including 4 years" of practical experience to reach average performance. DOT 605.280-010 & 605.282-010. While Plaintiff testified that he knew how to use mills, there is no evidence that Plaintiff did so for two to four years, and certainly not enough to support the holding that he was a milling machine operator at the level of "substantial gainful activity." 20 C.F.R. § 404.1565(a). The only evidence supporting the ALJ's holding is Plaintiff's statement that he does "general machinery" work and "can" use lathes and milling machines, which was then repeated by the VE. AR at 189, 200.

This statement is insufficient to support the ALJ's finding that Plaintiff had past relevant experience as a milling machine operator. The ALJ's holding in this respect was thus erroneous. <u>Vertigan</u>, 260 F.3d at 1051 (claimant testimony at administrative hearing that cashier work was a "small part of her job" as a pharmacy clerk insufficient to uphold ALJ's finding that she had past relevant work as a cashier); <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1086 (9th Cir. 1985) (agricultural worker's sorting of tomatoes does not count as past relevant work when it was just "one of many tasks" she performed on farm).

B.    <u>The ALJ's Failure To Develop The Record Regarding Plaintiff's Milling Experience Constitutes Legal Error</u>

In social security cases, it is the claimant's duty to demonstrate that he suffers from a disability. <u>See Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001); 42 U.S.C. § 423(d)(5). Nevertheless, the ALJ has an independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted); <u>see also</u>, <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1068-69 (9th Cir. 2006). This

duty is triggered by ambiguous or insufficient evidence. <u>Tonapetyan</u>, 242 F.3d at 1150; <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).   The ALJ must not be "'a mere umpire' during disability proceedings," rather he must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" <u>Widmark</u>, 454 F.3d at 1068-69 (9th Cir. 2006) (citing <u>Higbee v. Sullivan</u>, 975. F.2d 558, 561 (9th Cir. 1992) (per curiam)).   This duty is especially pertinent when, as here, Plaintiff is not represented by counsel. <u>Id.</u>; <u>Higbee</u>, 975 F.2d at 561; <u>see also</u>, 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (stating that ALJ will "try to obtain additional evidence" when record is inconsistent or insufficient).

As stated above, milling machine operation first entered the record via a mistake on the ALJ's part.   AR at 188.   Plaintiff immediately attempted to correct the notion that he worked on lathes and milling machines. <u>Id.</u>   When the VE later indicated that Plaintiff had worked with milling machines, Plaintiff again interjected that this was not part of his job. <u>Id.</u> at 200.   The VE then opined without any factual basis that even if Plaintiff hadn't previously worked as a machinist, he might possess those skills. <u>Id.</u> at 201.   Nonetheless, the ALJ incorporated this unsupported opinion into his holding. <u>Id.</u> at 15.

The ALJ's decision to proceed without further developing the record on this point was error. <u>See</u> <u>Armstrong v. Comm'r of Soc. Sec. Admin.</u>, 160 F.3d 587, 589 (9th Cir. 1998) (holding that where record was unclear as to determinative issue, ALJ committed reversible error by deciding issue without further consultation).   Both times Plaintiff stated that he had not worked as a milling machine operator, the ALJ responded with the phrases, "Uh-huh," and, "All right," without further elaboration or follow-up questioning.   AR at 189, 200.   Absent other evidence to

30

support the conclusion that Plaintiff had been a milling machine operator, and absent any indication that the ALJ later pursued the question, the ALJ's responses did not constitute the required "scrupulous[] and conscientious[]" inquiry into "all relevant facts." Widmark, 454 F.3d at 1068-69 (citations omitted).

C.   The ALJ's Failure To Inquire About Conflicts With The Dictionary Of Occupational Titles Was Harmless Error

Plaintiff also argues that the ALJ ran afoul of SSR 00-4p and the Ninth Circuit's recent holding in Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007), and that this error added to the confusion regarding Plaintiff's potential previous work as a milling machine operator.  Pl. Mem. at 10; Reply at 4-5.  Massachi states that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles," and that the duty to inquire is an affirmative one.  Id. at 1152.  Plaintiff contends that had the ALJ performed his duties under Massachi, the ALJ's confusion between a milling machine operator and a millwright might have been rectified.  Reply at 4.  Defendant replies that any error committed by the ALJ is this regard was harmless, and therefore not reversible.  Def. Mem. at 5-6.

The Massachi requirement is based on Social Security Ruling ("SSR") 00-4p, which imposes an affirmative burden on the ALJ to ascertain any conflict between the DOT and the VE's testimony.  The underlying purpose of the rule is to "obtain a reasonable explanation for any apparent conflict" between the VE's opinion and information provided in the DOT, Massachi, 486 F.3d at 1152-53 (citing SSR 00-4p), and provides a "clear mandate[]" to compare the two sources of information.  Garnica v.

<u>Astrue</u>, 238 Fed.Appx. 254, 255 (9th Cir. 2007) (unpublished opinion);
9th Cir. R. 36-3 (permitting citation to unpublished opinions issued
after January 1, 2007) .  Failure to conduct such inquiry is analyzed
under the harmless error standard.  <u>Massachi</u>, 486 F.3d at 1154 n.19.[9]

While the ALJ had an "unambiguous[]" duty to make this inquiry of
the VE, <u>id.</u> at 1152, and failed to do so, this failure did not cause the
ALJ's unsupported conclusion.  There does not appear to be a discrepancy
between the DOT definition of a milling machine operator's duties and
that utilized by the VE and ALJ.  Rather, the issues in this case are
whether Plaintiff had prior relevant work as a milling machine operator
and the ALJ's failure to clarify the confusion regarding that work.  Had
the ALJ heeded <u>Massachi</u>, and asked the vocational expert whether his
description of milling machine work comported with that provided by the
DOT, these issues still would have remained unresolved.  Accordingly,
this error was harmless.

### III. <u>The ALJ Erred When Conducting the Step Five Analysis</u>

Without explicitly ruling on the issue, the ALJ "notes" that
Plaintiff's past relevant work skills are transferable to other work
existing in the national economy.  AR at 16.  The ALJ stated

> For the record, the undersigned notes that the vocational
> expert testified that the claimant's past relevant work
> provided skills that are transferable to other work that
> exists in the national economy, such as sedentary assembler
> and production inspector.  The vocational expert further
> testified that, assuming a person with the claimant's specific
> work restrictions and vocational profile, such a person could
> work as an assembler, with 1,300,000 positions nationally, and
> as a product inspector, with 300,000 positions nationally.
> Therefore, under step five of the analysis (described above),
> the claimant is not disabled pursuant to medical vocational

---

[9]The <u>Massachi</u> court does not indicate whether its holding is intended act
retroactively.  <u>Massachi</u>, 486 F.3d 1149.  However, subsequent courts have applied the
rule in such a manner, and this Court follows their example.  <u>Ormberg v. Astrue</u>, 2007
WL 3390921, slip op. at *2 (9th Cir. 2007); <u>Garnica</u>, 238 Fed.Appx. at 255.

rule 203.06.

Id. Plaintiff asserts that the ALJ erred in this analysis by failing to identify with sufficient specificity Plaintiff's transferable work skills and the nature of alternate employment he could perform. Reply 5-6.

Plaintiff is correct; the ALJ committed legal error when he neglected to specify what, if any, of Plaintiff's skills were transferable to other employment, and failed to identify with particularity what that other employment was. This error is particularly pronounced as, per the guidelines, Plaintiff's advanced age narrows the range of work he can perform and demands more specific findings from the ALJ. 20 C.F.R. 404 §§ 1563(e), 1568(d)(4).

At step five of the disability analysis, the burden shifts to the Secretary to show the existence of other work in the national economy that a claimant can perform. 20 C.F.R. §§ 404.1520(f), 416.920(f). Specific instructions apply to claimants in Plaintiff's age bracket. 20 C.F.R. 404 §§ 1563(e), 1568(d)(4). When a claimant is "closely approaching retirement age," i.e., aged sixty to sixty-four (Plaintiff was sixty-two at the time of the hearing), and limited to no more than "light" work, the guidelines restrict him to a much narrower range of employment than if he were younger and/or capable of more strenuous work. 20 C.F.R. 404 § 1568(d)(4). Under these circumstances, the ALJ may only find that the claimant has skills that are transferable to skilled or semi-skilled light work if the new work would require "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." Id.; Lounsburry v. Barnhart, 468 F.3d 1111, 1116-17 (9th Cir. 2006) (finding of disability proper when

claimant is of advanced age, cannot perform past relevant work, and possesses skills that are not readily transferrable); <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1279 (9th Cir. 1990).

The ALJ states that Plaintiff has the RFC to perform medium work. AR at 15 (describing Plaintiff's ability to lift twenty-five pounds frequently, etc, which corresponds to a medium RFC). However, as discussed above, this finding is based on an improper evaluation of the medical evidence and improper rejection of Plaintiff's testimony, and is thus compromised by legal error. There is therefore no conclusive finding regarding Plaintiff's RFC, whether it be "sedentary," "light," or "medium." This information is necessary to establish whether he falls under the guidelines' particularly stringent rules regarding claimants of advanced age who are limited to light work, 20 C.F.R. 404 §§ 1563(e), 1568(d)(4).

The ALJ also erred when he failed to specify precisely what type of work he anticipated Plaintiff could perform in the national economy. In response to two hypotheticals, the VE testified that, even assuming Plaintiff suffered from the most severe exertional limitations proposed in the medical record, he would be able to perform "sedentary work" as an assembler or product inspector, though he did not specify to which of the hundreds of types of assembler and inspector jobs he referred. AR at 203-04 (basing hypothetical questions on limitations proposed by Dr. McCormick). Nevertheless, the ALJ adopted those findings in his opinion. <u>Id.</u> at 16.

The ALJ states that there are 1.3 million assembler positions nationally, <u>id.</u>, and the DOT enumerates hundreds of job titles containing the word "assembler," requiring varying degrees of strength, mobility, and skill. These range from "Assembler, Steam-and-Gas

Turbine" which requires the employee to exert twenty to fifty pounds of force, as well as the ability to calculate "variables and formulas; monomials and polynomials," DOT 600.261-010, to "Clip-On Sunglasses Assembler" which merely requires the worker to exert up to twenty pounds of force and "perform the four basic arithmetic operations with coins," among other relatively simple tasks, DOT 713.684-010. The occupation of "inspector" is equally broad, encompassing such diverse positions as "Veterinary Livestock Inspector" and "Building Inspector." Despite the vast range of positions and duties encompassed by the titles "assembler" and "inspector," neither the VE nor the ALJ identify which of these jobs they believe Plaintiff can perform.

The ALJ also fails to state the physical demands of those positions or to specify which of Plaintiff's skills are transferrable to other work. The only transferable skill mentioned was that of lathe operator, which, as discussed above, is an ability that Plaintiff may never have possessed. Id. at 201. Moreover, neither the VE nor the ALJ explained how Plaintiff's potential skills with a lathe would assist him in performing work as a sedentary "assembler" or "production inspector."

The ALJ's unsupported statement that Plaintiff has transferrable skills and can perform other jobs in the national economy is insufficient and constitutes legal error. The ALJ is required to make more detailed findings to support the burden of showing that Plaintiff may perform other work in the national economy, especially as Plaintiff is of advanced age. Terry, 903 F.2d at 1278-79; Lounsburry, 468 F.3d at 1116-17; 20 C.F.R. §§ 404.1520(f), 416.920(f). In Terry, the VE briefly described the job to which the claimant's skills might transfer, stating, "in the Hand Bookkeeper job she would not be handling products but would be recording data within a bookkeeping system." Id. at 1279.

The appellate court characterized this "laconic description" as "shed[ding] virtually no light on what the job involves," and stated that, but for the claimant's advanced age, it would be a close question as to whether this constituted sufficient evidence upon which the ALJ could base his holding. Id. However, as the Terry claimant was over sixty, the regulations imposed a more stringent duty on the ALJ, and required him to identify the degree of adjustment the claimant would have to make to any new occupation, in addition to describing the nature of the employment. Id. As the VE failed to provide this information, the ALJ's opinion was overturned, and the claimant was found not disabled. Id.; see also Renner v. Heckler, 786 F.2d 1421, 1424-25 (9th Cir. 1986) (applying heightened standard for claimants of advanced age); Lounsbury, 468 F.3d at 1116-17.[10]

Here, not only did the ALJ fail to identify which amongst the hundreds of assembler and inspector jobs he expected Plaintiff could perform, neither he nor the VE provided any description of the duties these jobs entailed, much less which of Plaintiff's skills transferred to the positions. This is much less than the "laconic" description of bookkeeping in Terry, which itself was insufficient to support the ALJ's denial of disability. Terry, 903 F.2d at 1279.

In light of these ambiguities and legal errors, remand is appropriate to assess what capacity for work Plaintiff retains, as well

---

[10]The Court notes that the reasoning in Terry and Renner is partially founded on language in the guidelines requiring an ALJ to find that an elderly claimant's professional skills are "highly marketable." Terry, 903 F.3d at 1279; Renner, 786 F.2d at 1424-25. While this specific phrase has been removed from the regulations, they still explicitly hold the Commissioner to a much more stringent standard with regards to elderly claimants. 20 C.F.R. 404 §§ 1563(e), 1568(d)(4). The reasoning underlying Terry and Renner- that an ALJ must make more, and more specific findings when finding that an elderly claimant may perform other work in the economy- thus remains the same.

1   as what work, if any, exists in the national economy that Plaintiff can
2   perform.   In conducting this inquiry, the ALJ should be particularly
3   mindful of Plaintiff's age.  <u>See</u> <u>Renner</u>, 786 F.2d at 1423-24 (remand for
4   further findings appropriate when ALJ failed to clarify what vocational
5   adjustment elderly Plaintiff would be required to make).

6                   **<u>CONCLUSION AND RECOMMENDATION</u>**

7       Plaintiff seeks reversal of the ALJ's decision and an award of
8   benefits or, alternatively, remand to a different ALJ.  Pl. Mem. at 11;
9   Reply at 6.   Defendant requests that the ALJ's decision be upheld
10  without modification or, alternatively, that the case be remanded.  Def.
11  Mem. at 7.   The Social Security Regulations permit a court to enter a
12  judgment affirming, modifying, or reversing the Commissioner's decision.
13  20 C.F.R. § 405.510.   The reviewing court may also remand the matter to
14  the Social Security Administrator for further proceedings.  <u>Id</u>.   If
15  "additional     proceedings     can     remedy     defects     in     the     original
16  administrative proceeding, a social security case should be remanded."
17  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990) (quoting <u>Lewin v.</u>
18  <u>Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981)).

19      In the instant case, additional proceedings are necessary to remedy
20  defects arising from the original hearing.   Remand is appropriate to
21  (1) permit the Commissioner to reconsider Dr. McCormick's evidence in
22  light of the proper legal standard, at which time he also may consider
23  Dr. Brown's report, (2) revisit the step five analysis and assess what
24  work, if any, Plaintiff may perform in the national economy, keeping the
25  regulations in mind as they apply to a man of Plaintiff's age, and
26  (3) give the ALJ the opportunity to express specific, fact-based reasons
27  for his findings.  <u>See</u> <u>Widmark</u>, 454 F.3d at 1070 (remand appropriate
28  when ALJ erroneously discredited treating doctor in favor of non-

treating doctor); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1463-64, 1467 (9th Cir. 1996) (case remanded to give proper credit to treating doctor's opinion and ALJ encouraged to hear additional evidence); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993) (remand necessary for ALJ to repeat step four analysis and articulate specific findings); <u>Renner</u>, 786 F.2d at 1423-24); <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). Plaintiff has not provided any facts supporting his request for review by a new ALJ and this Court finds none. Remand to ALJ Dostal is thus appropriate. <u>Moore v. Apfel</u>, 216 F.3d 864, 868 (9th Cir. 2000) (decision to remand to same ALJ within reviewing court's discretion).

Thus, in light of all of the above, and after a careful review of the record, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** and that Defendant's cross-motion for summary judgment be **DENIED**. It is further **RECOMMENDED** that the case be remanded to the ALJ for further proceedings consistent with this report.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than February 14, 2008**. The document should be captioned "Objections to Report and Recommendation."

///

///

///

///

///

///

38

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be

2    filed with the Court and served on all parties **no later than February**

3    **28, 2008.**   The parties are advised that failure to file objections

4    within the specified time may waive the right to raise those objections

5    on appeal of the Court's order.   Martinez v. Ylst, 951 F.2d 1153 (9th

6    Cir. 1991).

7    **IT IS SO ORDERED.**

8    DATED:   January 31, 2008

9

10                                              BARBARA L. MAJOR
                                                United States Magistrate Judge
11

12   COPY TO:

13   HONORABLE WILLIAM Q. HAYES
     U.S. DISTRICT JUDGE
14
     ALL COUNSEL
15

16

17

18

19

20

21

22

23

24

25

26

27

28